FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 10, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LUKE JOSEPH S.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 1:17-CV-03203-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**

    Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12, 17. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C § 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for summary judgment and

remands for further proceedings consistent with this order. Accordingly, the Court also **DENIES** Defendant's motion for summary judgment.

## I.    Jurisdiction

Plaintiff filed an application for Supplemental Security Income on July 28, 2014. AR 438-43. His alleged onset date is July 28, 2014. AR 483. His application was initially denied on September 3, 2014, AR 339-51, and on reconsideration on December 3, 2014, AR 355-64.

A hearing with Administrative Law Judge ("ALJ") Wayne Araki occurred on March 10, 2016. AR 50-99. On September 30, 2016, the ALJ issued a decision finding Plaintiff ineligible for supplemental security income. AR 20-42. The Appeals Council denied Plaintiff's request for review on October 6, 2017, AR 1-6, making the ALJ's ruling the "final decision" of the Commissioner.[1]

Plaintiff timely filed the present action challenging the denial of benefits, on December 7, 2017. ECF No. 1. Accordingly, his claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

//

---

[1] Plaintiff previously filed for, and was denied, disability insurance benefits and supplemental security income. ALJ Araki found the principle of *res judicata* applied to the period preceding and including February 10, 2011, the date upon which the Commissioner's decision became final. AR 20. However, because Plaintiff's social function and concentration, persistence, and pace worsened after the prior decision, ALJ Araki found the presumption of continued non-disability, as set forth in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988) was rebutted. *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 2**

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

## III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 46 years old at the time of his hearing. He has previously worked as a bus boy, a food server, and a hair stylist.

AR 77-79, 468. He also has worked some odd jobs and some volunteer work, and he did some work while in prison for three years. AR 23, 58, 75.

## V.     The ALJ's Findings

The ALJ determined that: The substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped substance use. As the substance use is a contributing factor material to the determination of disability, Plaintiff has not been disabled within the meaning of the Act from the date the application was filed through the date of the decision. AR 42.

**At step one**, the ALJ found that Plaintiff may have engaged in substantial gainful activity since July 28, 2014, the application date (citing 20 C.F.R. §§ 416.920(b) & 416.971 et seq.). AR 23-24. The ALJ made this finding because Plaintiff testified that he is a caregiver for his landlord in exchange for room and board, and the ALJ did not have information for the current market value of a room rental in Plaintiff's area; thus, the ALJ was unable to make a finding as to whether this work activity rose to the level of substantial gainful activity and continued with the analysis. *Id.*

**At step two**, the ALJ found Plaintiff had the following severe impairments: schizoaffective disorder, alcohol abuse disorder, poly-substance abuse disorder, and low back pain from a herniated disc (citing 20 C.F.R. § 416.920(c)). AR 24.

The ALJ found that if the substance use was removed, Plaintiff would continue to have schizoaffective disorder and low back pain. AR 30.

At **step three**, the ALJ found, with and without substance use, that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 25-27, 30-32.

**At step four**, with substance use disorders included, the ALJ found Plaintiff had the following residual functional capacity: he can lift or carry twenty pounds occasionally and ten pounds frequently; he can stand/walk for two-hour intervals for eight hours per day, and he can sit for two-hours intervals for eight hours per day; he cannot climb ladders, ropers, or scaffolds, but he can frequently climb stairs and ramps, balance, stoop, kneel, crouch, or crawl; he is limited to occasional exposure to vibrations and cannot work at heights, operate heavy equipment, and he cannot drive; he can remember, understand, and carry out instructions and tasks generally required by occupations of SVP 1 or 2; he can adapt to changes for SVP 1 or 2 occupations; he can have occasional, superficial interaction with the general public; he can have occasional interaction with co-workers and supervisors; he will miss two days per month on a consistent basis; and he will need to take fifteen to thirty-minute breaks in addition to normal breaks because of interference from his symptoms. AR 27-29.

With substance use disorders included, the ALJ determined that Plaintiff is unable to perform any past relevant work. AR 29.

Alternatively, however, the ALJ found that if Plaintiff stopped substance use, he would have the following residual functional capacity: he can lift or carry twenty pounds occasionally and ten pounds frequently; he can stand/walk for two-hour intervals for eight hours per day, and he can sit for two-hours intervals for eight hours per day; he cannot climb ladders, ropers, or scaffolds, but he can frequently climb stairs and ramps, balance, stoop, kneel, crouch, or crawl; he is limited to occasional exposure to vibrations and cannot work at heights, operate heavy equipment, and he cannot drive; he can remember, understand, and carry out instructions and tasks generally required by occupations of SVP 1 or 2; he can adapt to changes for SVP 1 or 2 occupations; he can have occasional, superficial interaction with the general public; and he can have occasional interaction with co-workers and supervisors.

Without substance use, the ALJ determined that Plaintiff would still be unable to perform any past relevant work. AR 41.

**At step five**, the ALJ found that, in light of his age, education, work experience, and residual functional capacity, including his substance use disorder, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 29-30.

However, if Plaintiff ceased substance use, the ALJ found that considering his age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that Plaintiff could perform. These include assembler production, packing line worker and cleaner, housekeeping. AR 41-42. The ALJ consulted a vocational expert in making this determination. *Id.*

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) failing to properly consider whether his seizures were severe and whether he met or equaled Listing 11.02; (2) failing to properly consider the medical opinion testimony; and (3) failing to fully credit Plaintiff without specific, clear, and convincing reasons for doing so. ECF No. 12 at 2.

## VII.   Discussion

### A. The ALJ properly found Plaintiff's seizures to be non-severe.

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's

ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

Under step two, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). A diagnosis from an "acceptable medical source," such as a licensed physician or certified psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 404.1513(d). Importantly however, a diagnosis itself does not equate to a finding of severity. *Edlund*, 253 F.3d at 1159-60 (plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

The ALJ found Plaintiff's seizure disorder to be a non-severe disorder. AR 24. Specifically, the ALJ found that Plaintiff's seizures were controlled with medication. *Id.* If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Brown v. Barnhart*, 390 F.3d 535, 540 (9th Cir. 2004). When Plaintiff correctly adhered to his medication, he did not report seizures. AR 1595. He did report experiencing seizures in early 2015, but laboratory results in April 2015 showed that Plaintiff was not taking his anti-

seizure medication. AR 1506. The ALJ reasoned that the few seizures in the record were likely due to medication non-compliance. Given the finding that the seizures are not even a severe impairment, Plaintiff has failed to demonstrate that he could meet or equal Listing 11.02, so failure to evaluate the seizures under the Listing is at most a harmless error.

Furthermore, because Plaintiff was found to have at least one severe impairment, this case was not resolved at step two. Thus, any error in the ALJ's finding at step two is harmless, if all impairments, severe and non-severe, were considered in the determination of Plaintiff's residual functional capacity. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity). The ALJ specifically included restrictions in the residual functional capacity to account for Plaintiff's seizures, including restrictions on heights, heavy machinery, and driving. AR 32. Accordingly, the Court finds the ALJ did not err in the step two analysis.

**B. The ALJ erred in evaluating some of the medical evidence.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those

who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted).

### a. Dr. R.A. Cline, Psy.D.

Dr. Cline evaluated Plaintiff in July 2014. AR 1264-76. In addition to the evaluation, Dr. Cline reviewed the records of Jose Perez, M.Ed., from July 2010. AR 1242-47, 1264. Dr. Cline found Plaintiff to have moderate limitations in five functional areas, and marked limitations in Plaintiff's ability to complete a normal work day and work week without interruptions from psychologically based

symptoms. AR 1266-67. Dr. Cline recommended that Plaintiff resume mental health services. AR 1267.

The ALJ gave great weight to the opinion to the extent it reflects Plaintiff's functioning during periods of substance use, but in periods without substance use, the ALJ gave the opinion little weight. AR 37. The ALJ noted that the only record reviewed was Mr. Perez's 2010 report, which was prepared when Plaintiff was using drugs. *Id.* Mr. Perez's report, however, stated that there was no indication of current or recent substance use. AR 1244. The ALJ reasoned that a full review of the record would have shown that during incarceration, Plaintiff was stable due to abstention from substance use and compliance with treatment and medication. AR 37. The ALJ referred back to the prison records, that detailed Plaintiff's ability to work in prison and notes from his prison mental health providers that he was stable. *Id.*; AR 1286-1348 (all prison records). The ALJ gave these records more weight because of their longitudinal history and consistency with the overall record. AR 37.

Dr. Cline's opinion is contradicted by the September and October 2014 opinions of state agency consultants Dr. Jan Lewis and Dr. Carla Van Dam. AR 40, 185-91, 210. Thus, the ALJ need give specific and legitimate reasons for giving little weight to Dr. Cline's opinion. *See Lester*, 81 F.3d at 830.

1    The ALJ found Dr. Cline's opinion to be deficient because the only record

2    reviewed was the 2010 report of Mr. Perez. AR 37. The value of Mr. Perez's

3    opinion to the ALJ is rendered inferior because the ALJ believed it was rendered at

4    a time Plaintiff was not sober, *id.*, a fact Plaintiff disputes, ECF No. 12 at 10. Upon

5    review, the Court finds the record does not support the ALJ's finding that Plaintiff

6    was actively using drugs or alcohol in the period of Mr. Perez's report.

7        Numerous reasons actually support that Plaintiff was not actively using

8    substances in this period. First, Mr. Perez stated in his report that there was no

9    indication of current substance use in July 2010. AR 1244. Other records from that

10   year do not indicate substance use. In March 2010, there is an inconclusive record

11   that states "hard to determine whether he is currently clean and sober." AR 1024.

12   However, in the same month, treatment records indicate that he was continuing to

13   work on his sobriety. AR 1038. In May 2010, Plaintiff reported that he had

14   thoughts of relapse, but he relied on his treatment program to avoid it. AR 1029.

15   His history of polysubstance abuse was described was "sustained full remission" in

16   the same month. AR 1033. A record dated July 2010 states that current drug abuse

17   was not indicated. AR 1250. In sum, the record does not support the ALJ's finding,

18   nor do the ALJ or Commissioner point to affirmative evidence to support, that

19   Plaintiff was using substances in July 2010.

20

Additionally, even if Mr. Perez's opinion had been during a period of substance use, Dr. Cline's evaluation was not, and Dr. Cline's opinion was based not only on record review, but a personal consultation with Plaintiff. Plaintiff had been released from incarceration just prior to Dr. Cline's evaluation, and he stated that he had not used any substances since his release. AR 1265. Even in light of the unreliability of Plaintiff's subjective symptom testimony, there is nothing in the record to suggest he was using drugs or alcohol in July 2014. Dr. Cline also found that Plaintiff had not used substances in the 60 days prior to the evaluation. AR 1267.

Contrary to the ALJ's findings, Dr. Cline clearly recognized that when in a controlled environment, Plaintiff's substance use would be in remission. AR 1266. Moreover, Dr. Cline also recognized that Plaintiff would have greater stability with mental health treatment—this is precisely the recommendation provided in the report. AR 1267. In sum, the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record for the weight given to Dr. Cline's opinion and remand is warranted.

**b. Dr. Melanie Edwards Mitchell, Psy.D.**

Dr. Edwards Mitchell reviewed the medical evidence in August 2014. AR 1269-71. The only medical report she reviewed was Dr. Cline's. AR 1269. There is no evidence that she met with Plaintiff or received any new information, and her

report demonstrates this, as it copies Dr. Cline's findings exactly. AR 1269-71. The ALJ did not discuss this opinion at all in his decision.

Generally, an ALJ must address probative evidence and provide legally sufficient reasons for rejecting it. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). However, here Dr. Edwards Mitchell's opinion does not offer anything new. It is not probative, as it is merely a recitation of Dr. Cline's prior opinion. Thus, the failure to address Dr. Edwards Mitchell's opinion is harmless. The real issue, as discussed prior, lies with the treatment of Dr. Cline's opinion, not Dr. Edwards Mitchell's review of it.

### c. Sarah K. An, ARNP

Plaintiff next argues that the ALJ erred by giving little weight to the opinion of Sarah K. An, ARNP, who provided a statement on January 28, 2016. AR 1587-88. Ms. An's opinion is considered that of an "other source." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons

germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ gave little weight to Ms. An's opinion for multiple reasons. First, the ALJ found at step two that Plaintiff's seizure disorder was non-severe. AR 24. The Court found that this was not in error. *See supra* at pp.10-12.

Primarily, the ALJ found that the record did not support Ms. An's opinion. AR 39-40. An ALJ may reject a provider's opinion when it is inconsistent with evidence in the record. *See Morgan*, 169 F.3d at 600. Imaging studies show no more than mild to moderate changes. AR 1471, 1723. Likewise, examination findings do not support the level of impairment opined by Ms. An. *See, e.g., 1562,* AR 1370, 1376, 1380, 1385, 1389, 1392, 1452, 1508, 1515, 1593, 1606, 1638, 1754. In addition, Plaintiff's conservative treatment of his back condition was inconsistent with Ms. An's assertion that he would miss multiple days of work due to his back impairment. *See* AR 34, 1506, 1755, 1770. Finally, Ms. An did not acknowledge Plaintiff's substance use, despite remission in the period shortly before she rendered her opinion. AR 39-40, 1683.

In sum, the ALJ provided multiple germane reasons for discrediting the opinion of Ms. An.

//

//

### d. Sonya Starr, ARNP

Ms. Starr[2] provided a medical report in February 2015, based on approximately one month of treatment. AR 1458-59. She opined that Plaintiff's seizures would cause him to miss as many as three days per month, and that his fragile mental health would also impact his ability to complete a 40-hour work week. AR 1459. The ALJ gave little weight to this opinion because it is inconsistent with the overall record and it was based on self-reporting by Plaintiff.

Again, Ms. Starr's opinion is that of an "other source," and the ALJ needs to provide germane reasons for rejecting it. *Dodrill*, 12 F.3d at 915. Inconsistency with the record is an acceptable reason. *See Morgan*, 169 F.3d at 600. Ms. Starr relied on Plaintiff's seizure disorder, which the ALJ found to be controlled by medication. *See supra* at pp. 11-12. The ALJ also pointed to multiple pieces of evidence that demonstrate that, with sobriety and mental health treatment, Plaintiff had improved mental function and is able to maintain an active lifestyle, including the ability to work. *See, e.g.,* AR 35-36, 65-73, 1264-65, 1314, 1321, 1455, 1480, 1671, 1680, 1693.

Ms. Starr also relied on self-reporting to develop her opinion. AR 38. An ALJ may discount a provider's opinion if it is based largely on the claimant's self-

---

[2] The ALJ incorrectly refers to Ms. Starr as "Sonya Stans" in his decision, but the record reflects her name to be Sonya Starr.

reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see also infra* at 21-25.

The Court finds the ALJ provided germane reasons for discounting the opinion of Ms. Starr and finds no error.

### e. Joanna Kass, ARNP

Joanna Kass, ARNP, provided a Mental Source Statement in December 2015. AR 1544-47. She opined numerous marked limitations in functioning areas and that Plaintiff would be off-task more than 30% of the time and miss 4 or more days per month due to his mental health symptoms. *Id.* The ALJ gave little weight to this opinion. AR 39.

Ms. Kass' opinion does not mention Plaintiff's substance use disorder, which is particularly relevant in this time period because Plaintiff relapsed and used methamphetamine in the same month. AR 1683. The record supports the ALJ's conclusion that Plaintiff's mental health is significantly impaired when he uses drugs, which makes Ms. Kass' opinion less reliable regarding his condition while sober. When sober and receiving medication and treatment, Plaintiff had improved mental function and is able to maintain an active lifestyle, including the ability to work. *See, e.g.,* AR 35-36, 65-73, 1264-65, 1314, 1321, 1455, 1480, 1671, 1680, 1693.

Additionally, as with Ms. Starr's report, Ms. Kass based her report in part on Plaintiff's self-reporting. As the ALJ did not err in finding Plaintiff's subjective symptom testimony unreliable, this was a germane reason to reject Ms. Kass' report. *See Ghanim,* 763 F.3d at 1162; *see also infra* at 21-25.

**C. The ALJ properly rejected Plaintiff's subjective symptom testimony.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ found that if Plaintiff stopped substance use,

his medically determinable impairments could reasonably be expected to produce the alleged symptoms, but Plaintiff's statements concerning intensity, persistence, and limiting effects were not credible. AR 33. The ALJ supported this with numerous reasons supported by substantial evidence in the record. AR 33-36. As Plaintiff alleged both physical and mental limitations, the ALJ separated the analysis.

### a. Physical impairments

The ALJ found that Plaintiff's allegations of pain and limiting effects of his back impairment were "out of proportion to the objective findings." AR 33. Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). For example, the ALJ pointed to only mild or moderate findings on imaging. AR 1471, 1723. Likewise, examination findings did not corroborate Plaintiff's testimony about the limiting effects of his back pain. The ALJ referenced multiple instances in the record of only mild tenderness, painless range of motion in the back, normal gait, normal motor strength, intact sensation, and normal deep tendon reflexes throughout Plaintiff's lower extremities. *See, e.g., 1562,* AR 1370, 1376, 1380, 1385, 1389, 1392, 1452, 1508, 1515, 1593, 1606, 1638, 1754.

Plaintiff's own statements are also inconsistent with his allegations of disabling limitations, which can be a clear and convincing reason to discredit a claimant's subjective testimony. *Smolen*, 80 F.3d at 1284. Plaintiff stated in July 2014 that he was "in pretty good shape physically" and that he did not have any complaints about medical issues. AR 1279. This is directly at odds with his allegations that his back pain prevents him from employment.

The ALJ also found that Plaintiff's activities of daily living are inconsistent with his subjective symptom testimony. AR 34. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff is able to ride his bike, and he testified that he walks a mile to and from the store to get groceries for his landlord. AR 72-73. He also has performed odd jobs and volunteer work during the relevant time period. AR 65-66.

Next, the ALJ found the conservative care to treat his back pain was inconsistent with his allegations of disabling limitations. AR 34. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)

(internal quotations omitted). The ALJ noted that Plaintiff's primary treatment for his back included gentle stretching, ice/heat, and over-the-counter pain reliever.[3] AR 34, 1506, 1755, 1770.

Moreover, while the ALJ did not find Plaintiff credible regarding the limiting effects of his back pain, the ALJ did limit him to light work with some additional postural limitations in the residual functional capacity. AR 34. This is generous despite the support offered by the record for the ALJ's findings. In sum, the Court finds no error in the ALJ's assessment of Plaintiff's subjective testimony regarding his physical impairments.

### b. Mental impairments

The ALJ found that Plaintiff's schizoaffective disorder was significantly improved with sobriety, although not eliminated. AR 34. This is contrary to Plaintiff's allegations that his mental impairments are disabling regardless of his sobriety.

The ALJ noted that while there were still evidence of Plaintiff's schizoaffective disorder, during periods of sobriety, such as during his incarceration, he demonstrated "conservative mental status examinations." AR 34, 1294, 1314, 1321, 1322, 1325, 1328, 1332, 1339. Upon release from prison, Plaintiff continued to demonstrate mild mental examination findings when he was

---

[3] The record also demonstrates Plaintiff took some muscle relaxers for treatment. AR 1755.

not using drugs or alcohol. *See, e.g.,* AR 1284, 1370, 1373, 1376, 1455, 1474, 1591, 1681. This inconsistency between these benign findings and Plaintiff's allegations of disabling mental impairments is a legally sufficient reason to reject a claimant's subjective testimony. *See Tonapetyan*, 242 F.3d at 1148.

The record also supports the ALJ's finding that compliant treatment improves Plaintiff's mental functioning. AR 35. Improvement as a response to treatment may be considered by the ALJ when considering subjective symptom testimony. *Morgan*, 169 F.3d at 599-600. Plaintiff demonstrated improvement with treatment, both during incarceration and after release, when he was compliant with the treatment. AR 1264-65, 1314, 1321, 1455, 1480, 1671, 1693. Plaintiff himself even recognized this improvement on multiple occasions. He told his prison psychiatrist he did not want to change any of his medications because they had been helpful to him. AR 1313. He also described his medication as "adequate" and without side effects in November 2013. AR 1500. He also acknowledged counseling to be helpful to him. AR 1782.

As with his physical impairments, the ALJ also noted that Plaintiff's activities of daily living were inconsistent with disabling mental impairments. AR 35-36. Again, the ALJ may consider the inconsistency between the allegations and the activities to evaluate the credibility of the subjective symptom testimony. *Molina*, 674 F.3d at 1113. The ALJ pointed to Plaintiff's ability to care for his

girlfriend's disabled daughter and his mother's small dog. AR 564. The ALJ also found that Plaintiff had "sought employment and been quite active," which is inconsistent with his allegations. AR 35-36. He tried on numerous occasions to get a job, and he did odd jobs as well as volunteer work. AR 65-73, 1680. Evidence that Plaintiff does not work for reasons other than his impairments is a sufficient basis to discredit testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *see also Tommasetti*, 533 F.3d at 1040 (evidence that Plaintiff is not employed for reasons beyond impairments may be considered by the ALJ).

Finally, the ALJ noted evidence in the record that undermined Plaintiff's testimony, specifically regarding his motives for seeking Social Security benefits. AR 36. An ALJ may employ "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. In a pre-prison release interview in January 2014, Plaintiff asked the support worker performing the evaluation, "So, when I get interviewed, do I act crazy or normal?" with regard to his application to obtain Social Security benefits. AR 1323. He also reported in October 2014 that he only experienced hallucinations when he was doing drugs. AR 1450.

In sum, the ALJ provided numerous, valid reasons that are substantially

supported by the record for failing to accept Plaintiff's subjective symptom

testimony.

**D. Remedy**

The Court has the discretion to remand the case for additional evidence and

findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award

benefits if the record is fully developed and further administrative proceedings

would serve no useful purpose. *Id.* Remand is appropriate when additional

administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d

759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are

necessary for a proper determination to be made.

On remand, the ALJ will reconsider the opinion of Dr. Cline in conjunction

with the record as a whole. If the ALJ again determines Dr. Cline's opinion is

unreliable, he or she must provide reasons supported by substantial evidence in the

record. The ALJ will then recalculate his residual functional capacity and

Plaintiff's ability to perform work available in the national economy, as necessary.

**VIII. Conclusion**

Having reviewed the record and the ALJ's findings, the Court finds the

ALJ's decision is not supported by substantial evidence and contains legal error.

//

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17,** is **DENIED.**

3. Judgment shall be entered in favor of Plaintiff and against Defendant.

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 10th day of September, 2018.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge